UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KUNTA K. WIGGINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14CV1909 HEA |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's request for judicial review under 42 U.S.C. § 405(g) of the final decision of Defendant denying Plaintiff's application for disability insurance benefits and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act), 42 U.S.C. §§ 401-434, 1381-1385 . For the reasons set forth below, the Court will affirm the Commissioner's denial of Plaintiff's applications.

### **Facts and Background**

On August 14, 2013, Administrative Law Judge Bradley L. Davis conducted a hearing at which Plaintiff testified by telephone.[1] Plaintiff was born on July 4,

---

[1] At the time of the hearing Plaintiff was unable to appear in person as he was incarcerated at a Missouri correctional facility located in Bonne Terre, Missouri relative a parole violation.

1977. He was 36 years old at the time of the hearing. Plaintiff did complete high school. Plaintiff had past work experience as a security guard for SSI Global. He also worked as a driver delivering mail for the IRS.

Plaintiff testified that he has a hard time concentrating and can't remember things. He also testified that he has a bad temper and blacks out and doesn't remember what he does. He also gets blurry vision and real bad headaches.

Plaintiff also testified that he has received a head injury resulting from falling off a porch while he was sleeping. He noted the physician told him he did not sustain a concussion but it seems his ability to focus, concentrate and remember got worse after the fall. There was also testimony that he reported hearing voices about six months prior to the hearing on his claim. The voices tell him not to take his medications. The psychiatrist at the correctional facility prescribed some medication to help control/resolve those things.

Prior to his incarceration Plaintiff resided with his mother. He would do chores such as cut the grass, clean up, wash dishes, take out the trash, and general household cleaning. He testified that while living with his mother, he felt good on most days but several times a week he would feel anxiety and paranoia.

The ALJ secured testimony of Barbara Meyers, a Vocational Expert. As a result of her testimony based upon hypothetical the ALJ found Plaintiff had the severe impairments of depressive disorder, personality disorder and a history of

substance. The ALJ also found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520 (d), 404.1525, 404.1526, 416.920 (d), 416.925 and 416.926.

The Appeals Council denied Plaintiff's request for review on September 11, 2014. The decision of the ALJ is now the final decision for review by this court.

## Statement of Issues

The issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact by the ALJ are supported by substantial evidence on the record as a whole. Here the Plaintiff asserts the ALJ did not properly consider the medical opinion evidence.

## Standard for Determining Disability

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611. At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611. At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the

ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a)(1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a) (4) (iv), 404.1520(f), 416.920(a) (4) (iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. Id... At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a

significant number of jobs within the national economy. *Id.; Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir.2012).

**RFC**

A claimant's Residual Functional Capacity (RFC) is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p. An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole, including: the objective medical evidence and medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984); 20 C.F.R. § 404.1529; SSR 96–7p.

A claimant's subjective complaints may not be disregarded solely because the objective medical evidence does not fully support them. The absence of objective medical evidence is just one factor to be considered in evaluating the claimant's credibility and complaints. The ALJ must fully consider all of the

evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

(1) The claimant's daily activities;

(2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) Any precipitating or aggravating factors;

(4) The dosage, effectiveness, and side effects of any medication; and

(5) The claimant's functional restrictions.

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir.2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. See *Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F .3d 687, 697 (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir.2006).

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005). "It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence." *Id*. The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ need only acknowledge and consider those factors. *Id*. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988). The burden of persuasion to prove disability and demonstrate RFC remains on the claimant. *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

**ALJ Decision**

The ALJ here utilized the five-step analysis as required in these cases. The ALJ determined at Step One that Plaintiff had not engaged in substantial gainful activity since November 1, 2008. The ALJ found at Step Two that Plaintiff had the severe impairments of depressive disorder, personality disorder and a history of substance abuse.

At Step Three, the ALJ found that Plaintiff did not suffer from an impairment or combination of impairments that meets or medically equal the

severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

As required, prior to Step Four, the ALJ determined the Residual Functional Capacity of Plaintiff to perform a full range of work at all exertional levels but with nonexertional limitations as follows: he is limited to performing simple, routine, repetitive tasks requiring no more than superficial interaction with the public or co-workers (deal with things rather than people) , and cannot deal with more than more than occasional changes in routine work setting.

At Step Four it was the finding of the ALJ that Plaintiff was capable of performing past relevant work as a janitor. The ALJ also found the work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

Step Five the ALJ concluded that considering the Plaintiff's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that Plaintiff also can perform, such as kitchen helper, hand packager, night cleaner, The ALJ, therefore, found Plaintiff not disabled, and denied the benefits sought in the Application.

**Judicial Review Standard**

The Court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is

supported by substantial evidence in the record as a whole.'" *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir.2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir.2008)). "Substantial evidence is 'less than preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir.2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir.2009)). In determining whether substantial evidence supports the Commissioner's decision, the Court considers evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" Id. (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir.2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir.2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir.2005)).

Courts should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir.2006). The Eighth

Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

## Discussion

Plaintiff asserts the ALJ did not properly consider the medical opinion evidence of Dr. Raza and therefore the residual functional capacity is not supported by substantial evidence on the record. The essence of this position appears to be that the ALJ provided insufficient reason for discounting or not giving great weight to the opinion of Dr. Raza.

Review of the transcript, record evidence, and decision of the ALJ yields a conclusion wholly contrary to Plaintiff's position.

The ALJ articulated reasoning for including and excluding factors in her decision. Although Plaintiff made certain claims, the entirety of the record did not support Plaintiff's claims. When Plaintiff first met Dr. Raza the record reflects that Plaintiff made no complaint of depression or anxiety, but noted he had not taken his medication for a couple of weeks and could not manage his anger. Dr. Raza noted that Plaintiff was calm, had appropriate mood, fair concentration and memory and limited judgment and insight, constricted affect, and appeared to hold back on information.

In July of 2013 Dr. Raza completed a Medical Source Statement - Mental form wherein the doctor noted Plaintiff had moderate limitations in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; make simple work related decisions; ask simple questions or request assistance; maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. Dr. Raza opined that Plaintiff had marked limitations in his ability to perform activities with schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

In August 2013 Dr. Raza noted that Plaintiff had no complaints and was doing ok. Dr. Raza also observed that Plaintiff's limitations were not caused by or exacerbated by drug or alcohol use

A treating physician's opinion that is not well-supported or is inconsistent with other substantial evidence is not entitled to controlling weight. *See Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight."). In addition, the fact that a treating physician's RFC assessment is in checklist format may limit its evidentiary value. *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001).

Plaintiff's treatment at Hopewell from 2009 through 2013 was plainly noted, but the record did not demonstrate a marked degree of limitation. His medication worked well at controlling his symptoms. As such, a claimant's impairment cannot be considered disabling if substantial evidence supports the ALJ's determination that the impairments can be controlled through treatment or medication. *Perkins v. Astrue*, 648 F.3d 892, 901 (8th Cir. 2011) (citing *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010)).

The record plainly reflects that while treating at Hopewell, Plaintiff was noted as cooperative and calm, fair concentration, fair memory, appropriate mood. He would appear anxious or depressed due to financial stressors or legal issues. These types of stressors are situational and therefore, not disabling. *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) ("The medical record

supports the conclusion that any depression experienced by Gates was situational in nature, related to marital issues, and improved with a regimen of medication and counseling."); *Mitchell v. Sullivan*, 907 F.2d 843 (8th Cir. 1990).

Plaintiff's mental status was not at the level of severity that prevented all work activity. He continued to search for work during the time frame of the purported disability and even acquired a forklift driving certificate as well as pursuing a career in heating and cooling. *See Lansford v. Barnhart*, 76 F. App'x 109, 110 (8th Cir. 2003) (searching for other work and receiving unemployment benefits is inconsistent with a claim of disability).

Dr. Raza's assessment of marked mental limitations was inconsistent with other evidence of record. In concluding same an ALJ may discount a medical opinion that is inconsistent with other evidence. *Goff v. Barnhart*, 421 F.3d 785, 790–91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount the opinion."). The ALJ noted that the state agency psychological consultant, James W. Morgan, Ph.D., reviewed the record in December 2010 and opined that Plaintiff had no more than moderate mental limitations. Dr. Morgan noted that Plaintiff had a history of inpatient psychiatric stays that related to substance abuse, but that Plaintiff did not require

inpatient treatment when he maintained sobriety. Dr. Morgan opined that Plaintiff would function better in a non-public work environment.

It is patently clear the ALJ considered the records from the Missouri Department of Corrections from 2011. These records demonstrated that Plaintiff symptoms of depression were much better with medication; his mental status exam was within normal limits; he was without serious symptoms of depression, psychosis, or mania; no impairment of insight or judgment' no signs of psychosis or mood disturbance. Upon being released in 2012, his status was virtually the same as it was in 2011.

Records available and scrutinized by the ALJ revealed an evaluation by Georgia Jones, M.D in April 2012 of no significant limitations. Plaintiff had intact social functioning and good concentration and persistence throughout the exam. Dr. Jones indicated that Plaintiff's prognosis would improve with sobriety. In addition a mental status exam while in the custody of the Missouri Department of Corrections in 2013 established there were no overt signs of severe mental illness. Dr. Raza's conclusions were rankly inconsistent with the other medical sources.

The ALJ considered all there was to consider, including Plaintiff's hospitalization and GAF scores. In March and April of 2007 He was assessed a

GAF score of 60. In December of 2009 Plaintiff had a GAF score of 50. The record discloses that these scores were related to his substance abuse and he was better when not intoxicated or under the influence of narcotic substances. On those occasions when Plaintiff was not abusing drugs or alcohol his GAF scores were higher.[2] This demonstrates the ALG finding was proper as it relates to Dr. Raza and the substance abuse of Plaintiff.

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. The decision will be affirmed. *Perkins v. Astrue,* 648 F.3d 892, 900 (8th Cir.2011); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).

The ALJ's clear and specific opinion is supported by substantial evidence in the record, and therefore must be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is affirmed.

A separate judgment in accordance with this Opinion, Memorandum and

---

[2] In October of 2011 his GAF score was 60 while incarcerated and free from substance abuse. In April of 2012 his GAF score was 70, with only mild symptoms.

Order is entered this same date.

Dated this 25th day of January, 2016.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE